Good morning, your honors. I apologize for my voice. I'm losing it fast. May it please the court and counsel, my name is Nicholas Markey. I represent for Shoten Law. This is yet another immigration court set on this court's docket, and again, it is an asylum claim. The immigration judge, as well as the BIA, denied Mr. Lal's applications for asylum, withholding CAT and voluntary departure. Mr. Lal maintains that he could not go back to his country in India because of his associations in India, namely his father's death as a Sikh and his friendship with two Indian women. He lived for five years elsewhere in India without incident, right, before he came over here and after the incidents of which he complains? He lived for five years without incident, your honors, because he was in hiding. So I would say that if he was working, he was working, your honor, but again, in hiding. If the court is saying, well, Well, your definition of in hiding, tell us what's in the record that would support that. His testimony, your honor, he testified at the individual hearing that he had lived elsewhere in hiding. He had heard from family and friends where he was from that he was being sought. I note that while the immigration judge held that he had no credibility, the BIA overturned that decision and found that he was credible. Therefore, it has to be taken as a truth, and he did produce evidence that he was in hiding from his testimony. If the court's inquiring that, well, doesn't that show that he could have moved to a different part of the country away from areas where he would be harmed, that is not our burden. That is the government. If we establish that we have been subject to persecution or harm, that turns the burden to the government to show that we can live someplace else in that country. He's in a little different position than the many Sikh cases that we're seeing. He's actually Hindu. I concede that, your honor. He is Hindu. However, as indicated in his testimony and in the letters that were submitted that the BIA rejected, apparently, his association was with friends that were Sikhs. It would be our position that that would be a protected group. Therefore, while he is not himself Sikh, he would, therefore, still be in a political group subject to persecution. They were pulling him in. The argument is that they were pulling him in to investigate acts of terrorism or his knowledge about his two friends who were suspected terrorists. Does the mere fact, assuming if it were an investigation, and their methods may have not been, well, I used to be able to say not up to our standards. Now I'm not so sure. But in any event, the beatings that he had and the like, is it just enough that if the subject matter is about his association with Sikhs, that that's enough for an imputed political opinion? I believe it is, your honor. Now the government... So every time the Punjabi police go after witnesses, if they happen to get somebody who has an association with or knowledge of the whereabouts of somebody who happens to be associated with the Sikhs and is suspected of being a terrorist, that that automatically stamps the investigation as one that is partly a central purpose of which is to go after someone because of their imputed political opinion? I think it's going to depend on the association. If this is a situation where government is investigating a Sikh and asking store owners on a street front if they serve Sikhs in that restaurant... Why would it be that? In other words, if you're doing a pure, straight-out criminal investigation and you have two people on the run who happen to be Sikhs and either there's an assassination that they're investigating or there's burning down something and they go after people who know them as precipient witnesses as to their whereabouts or location, you're saying that that automatically makes it a political inquiry? In part? In part, your honor. Just because they happen to be lucky enough in that case, if they're seeking asylum, to be material witnesses to targets who are, in fact, commanded by the government as terrorists? I would say it is enough, your honor, because if that individual like Mr. Law had a close relationship with these two individuals, it's clear that they were not seeking him as a material witness but instead were seeking him because of his association and his belief in his friends. So, where the government may say they were executing a prosecutorial function of beating Mr. Law to get information from him, I think that is not prosecutorial, it's persecutorial. In addition, if you take into consideration that his father was killed because of his assistance with rebuilding the Golden Temple, I think that you have enough there that would show that it makes political group. On another point, this is kind of an odd posture, the BIA says that he's credible. The IJ had said that his corroborating documents were not adequate. Now, I guess under the laws that stands now, even though an individual is found to be credible, the IJ can still demand documents that are supportive. Now, I would assume that if you start out this individual's credible, that you might take a little different view of the documents which he submitted to support his claim. So, could the IJ still be faulting him for not giving better corroboration? Even with his documents, your honor? Well, he's got these two documents, and the IJ says not good enough. I don't see how the IJ could have found him incredible or not credible, given the testimony that was presented and the documents that were presented. He, it's clear, the IJ's credibility finding, there is no basis for it, and I think that's why the BIA overturned it. So then we have to accept what it was true. Could the IJ find him not credible after he got the documents? I suppose that would be an issue on remand as to how he could be cross-examined on the documents. But at this point. What documents are we talking about? Are we talking about the documents that you want to supplement the record with? Yes, your honor. Because they're cumulative. If you assume he's credible, they just are cumulative. Right. They're cumulative, your honor. And they don't shed any light at all on whether he was suspected of aiding his friends in what was an extremely violent confrontation. They may be cumulative, your honor, but as the IJ ruled, the Real ID Act applied, and therefore he had to have some sort of documentation. So I would say that while they may be in part cumulative, they also support his claim. The police report, the doctor's notes, and the things like that, which all go to cooperation. Now, I fully concede the fact that the BIA didn't address that issue other than they said we will treat this as a remand and deny it. However, they didn't even address what it was. Now, I'm assuming the government's going to get up here and say, well, they don't have the authority to look at new evidence. Well, clearly they do under the regs. I think ACFR 100, I can't remember that, says the BIA has sui sponte power to reopen a case based on new information. Yeah, but it was – I mean, the problem – I mean, there were two problems. One of them is it wasn't new information in the sense that all this stuff could have been obtained at any time. And secondly, as I said, I mean, to me a more important thing, really, in a way, is that all of those documents simply add up to the fact that he was credible, which the BIA said. So we have to believe him when he gives his version and then ask whether, nevertheless, the BIA was compelled to find that the police were acting in this particular incident, which, as Judge Fletcher points out, is quite different from many of the seat cases. There's a specific instance of violent confrontation. He is suspected of aiding at least two terrorists, and they're investigating him. So why were they compelled to find otherwise? Well, Your Honor, there is nothing in the record that would not find that he was compelled. Well, meaning that the government – We've tangled ourselves up here. Yes, we have. Meaning that we've shown that he's credible, he's truthful. Now it's up to the government to say why the BIA was wrong in denying his claims. And what I'm saying is there's nothing in the record that the government submitted that could deny it. They didn't show that he could move to a different part of the country. They didn't address those issues. I think what this case has to do is be remanded back to the IJ for the government to present evidence that he could have moved or something to that effect before we can address that. Okay. I think it's now time for you to save your voice. Thank you, Your Honor. May it please the Court. Kylie Keene on behalf of the government. There are three categories of issues that are presented in this case, and a few of them didn't come up in Petitioner's arguments. I just wanted to briefly address them and then get right down to the merits. The first is this issue of jurisdiction, whether the court has jurisdiction over the timeliness of the asylum claim. And this is going to be important because it's going to determine whether or not this court is solely looking at a withholding and cat claim or if asylum can also be folded into that. It's the government's contention that the court lacks jurisdiction over the asylum claim and whether or not it was timely or there was an exception to that timeliness requirement. I think we assume that asylum was not timely filed. Yes, Your Honor. Right. It's conceded that the asylum application was not timely. So the question then shifts to whether or not the excuse that Mr. Law presented is within the jurisdiction of this court. And as the government briefed in our answering brief, we contend that because there's a material disputed fact regarding the excuse itself, that would remove it from falling under the precedent of the Ramadan and Hussab line of cases, which have held that that could present a mixed question of law and fact. And specifically the dispute that I'm speaking of is that Mr. Law alleged to the board that the immigration judge actually told him to pursue an adjustment of status application as opposed to an asylum application, whereas the government is contending that while the immigration judge did address the two avenues that he could go down, what he was merely doing was explaining to Mr. Law and his attorney at the time that if he were to pursue the asylum application, it would need to go on an expedited schedule, whereas if he were to pursue the adjustment application, he would probably need some continuances because he was in removal proceedings at the time that the application was filed. So it's a timing issue. Do you want to go down the asylum route? That needs to go for a merits hearing, and it's probably going to move a little bit faster. Or do you want to go the adjustment route, and the immigration judge indicated I'll keep giving you continuances to have that adjudicated? I mean, that was already way over the time that that came up. That is correct, Your Honor. Right. The immigration judge's advice would not bear on whether or not the asylum application was timely. It definitely was not timely under any construment of the facts. However, it would potentially give Mr. Law a reason to say that he had further delay. In other words, you have to prove that you filed within a reasonable time period, and I guess it would go to that question. But what the government is really contending is because there's a dispute as to the immigration judge's advice in the record, that that would remove it from this line of precedential cases that the court has held, that that would be a mixed question of law. In other words, we're saying the excuse is outside the jurisdiction of the court. The second of the two kind of category of issues we have in the case is regarding the due process claims that Mr. Law raises at the end of his opening brief, and those were in regard to the IJ's decision to deny continuance and the board's decision to deny the motion to remand for the additional documents that he presented. And it's just the government's contention that when you start getting down to the merits of the case, and some of this was borne out in Petitioner's argument here today, that the documents are cumulative in effect and that because they don't cure the defect, that is they don't show a nexus and they don't show that the harm rose to the level of persecution under the INA, that it was not an abuse of discretion or a due process violation to deny the motion to remand or for the IJ to deny continuance to obtain those documents. So that's just kind of a matter of I just wanted to raise that since it didn't come up in the other argument. So turning now really to the heart of the issue, we're looking at a withholding of removal claim and a CAC claim. And there were three findings of the board. As we've just heard, the immigration judge found Mr. Long credible. However, the board reversed, saying that the immigration judge didn't cite reasons for his adverse credibility finding. So the board made legal conclusions based on the factual record that the IJ laid out in his decision, and three determinations came from the board's decision. The first was no nexus. That is, he didn't prove that the harm was on account of a protected ground, which came up in the oral argument. The second is that there was no actual persecution because the harm he suffered didn't rise to that level under the understanding of the INA. And the third was failure to cooperate. I want to first address the nexus issue. I think that is of particular importance to the court because there are just so few published post-real ID cases of this court. They're just now kind of starting to come before the courts. And under the Real ID Act, Mr. Long had to prove that the imputed political opinion that he's alleging was a central reason for the alleged persecution. So there's a heightened standard post-real ID that he needs to show basically but for the imputed political opinion, the government or the Sikh terrorists would have sought to persecute him. And I think that that's where you're going to see. Where do you get the but for standard? I thought it was one central reason. Your Honor, the only published case I could find from this circuit came out last week, which is the Harusimova case. And that it's articulated there that central means primary importance to the persecutors and one that's essential to their decision to act. In other words, a motive is a central reason if the persecutor would not have harmed the applicant if such a motive did not exist. I'm quoting from the language of that decision that just recently came out. I've got the opinion, but I've read that one central reason as being the statement. And I'm not sure that's a but for causation standard. I guess it is true that the decision does not use the words but for. That is my interpretation. But I'm getting that from the sentence that says that a motive is a central reason. If the persecutor would not have harmed the applicant if that motive didn't exist. In other words, they need to show that in the, I guess, in the variety of different reasons that a persecutor would act, that that has to be a reason that forced them to act. In other words, if that wasn't there, they wouldn't have done what they did. So you're suggesting that they were legitimately investigating to find the terrorists? Correct. Maybe also they thought this guy was in sympathy with the other side. I think that's a completely reasonable interpretation from the record to say that they had several reasons to be interested in him. One of which could be, despite the fact that he is Hindu and his family is Hindu, that they have sympathy for the Sikh cause because he has associations with Sikhs and because his father helped rebuild the Golden Temple when it was destroyed in 84. I think that's reasonable. However, what the immigration judge found and what this court would have to find, reason in the record to find otherwise, is that the police were interested in him principally because of his association with terrorists. That's what the board conclusion ultimately was. And there just isn't enough in the record to say that that conclusion has to be reversed. And there is also the other side of this, which is that Mr. Lal is also claiming that the Sikhs were a persecutor in this, not only the government but also Sikhs. And I think the government were arguing in our brief that the Sikhs were interested in him mainly to kind of refill their ranks. They knew that he was friends with several of the other members, two of which had been killed, and that he might be sympathetic to their cause. And so he testifies over and over that they kept coming to his house to ask him to join the cause and also kind of, I don't know if guilted would be the right word, but trying to say, hey, your father helped rebuild the temple. Don't you want to honor your father who was killed for his activities and join us in our fight? And that, therefore, the government is contending that the record really bears out the fact that the Sikhs were interested in him to refill their ranks. And because they saw him as an informant for the police, because of the incident where Nitu, one of his friends, was killed in a police clash, after they knew that Mr. Lal had been taken down to the police station. So there's enough evidence in the record to support the board's determination that, really, the principal motivation on both the government's part and the Sikh organization's part was not centrally motivated by any imputed political opinion to him, although it might be a tangential issue. It wasn't the principal reason. If Your Honors don't have any more questions. I don't think so. Thank you. Thank you. Ms. Martin. Mr. Well, I guess you're out of time. If you want to take one shot, take it. One shot, Your Honor. With regards to this issue of Mr. Lal being friends of these Sikhs, I think counsel hit on the end of it. He was perceived as an informant, so he was also being persecuted by the Sikhs. He wasn't a friend of them. They came to his house to extract retribution, not, hey, how you doing, join us. And I think that's fairly clear in its testimony. Thank you, Your Honors. Thank you, counsel, both of you. The matter just argued will be submitted. And we'll mix your argument.
judges: Fletcher, Rymer, Fisher